UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. |
| v. | ) |
| | ) Judge |
| MIDWEST CAN COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

The United States of America, by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1. In this civil action under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), the United States seeks injunctive relief and civil penalties against Midwest Can Company, LLC ("Midwest Can") for violations of the CAA regulations relating to the control, testing, certification, and sale of portable fuel containers ("PFCs"), located at 40 C.F.R. Part 59, Subpart F ("PFC Regulations"). To ensure that PFCs sold in the United States meet the applicable emissions standard, the PFC Regulations require that manufacturers test and obtain certificates of conformity for their PFCs before selling those PFCs in the United States. Midwest Can failed to test its PFCs in the manner required by the regulations and failed to disclose required information in its applications for certain certificates of conformity, including its noncompliance with regulatory testing requirements and test results showing that Midwest Can PFCs failed to meet the

applicable emissions standard. Midwest Can sold millions of PFCs covered by certificates of conformity issued based on incomplete and untruthful certificate applications.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

3.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395 and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## NOTICE

4.  The United States has provided notice of the commencement of this action to the State of Illinois under Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## THE DEFENDANT

5.  Midwest Can is a Delaware LLC registered with the Illinois Secretary of State to do business in the State of Illinois and maintains its headquarters and corporate office in this judicial district at 10800 W. Belmont Ave., Franklin Park, Illinois, 60131.

6.  Midwest Can is a "person" within the meaning of Sections 113(b) and 302(e) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(e).

7.  Midwest Can is a "manufacturer" within the meaning of 40 C.F.R. § 59.680.

8.  At all relevant times to this action, Midwest Can was engaged in the business of selling, offering for sale, introducing or delivering for introduction into commerce in the United States new PFCs subject to the emission standards of the PFC Regulations.

## STATUTORY AND REGULATORY BACKGROUND

9.  Congress enacted the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its

population." CAA section 101(b)(1), 42 U.S.C. § 7401(b)(1).

10. Section 183(e) of the Act, 42 U.S.C. § 7511b(e), requires the Administrator of the EPA to list categories of consumer or commercial products that the Administrator determines contribute at least 80 percent of the volatile organic compound emissions from consumer or commercial products in areas violating the national ambient air quality standard for ozone.

11. Persons violating regulations promulgated under Section 183(e) are treated, for enforcement purposes, as having violated a requirement of Section 111(e) of the Act, 42 U.S.C. § 7411(e). 42 U.S.C. § 7511b(e)(6).

12. On May 16, 2006, EPA published a Federal Register notice that added PFCs to the list of consumer products to be regulated under Section 183(e). 71 Fed. Reg. 28,320.

13. On February 26, 2007, EPA promulgated the PFC Regulations under Section 183(e). 72 Fed. Reg. 8,428.

14. The PFC Regulations set emission standards for PFCs and establish procedures for PFC manufacturers to conduct emission tests on their PFCs and to apply for and obtain certificates of conformity for a PFC emission family. 40 C.F.R. §§ 59.611, 59.621-59.653.

15. The PFC Regulations apply to all portable fuel containers or "PFCs" that are manufactured on or after January 1, 2009. 40 C.F.R. § 59.600. PFCs are defined as "any reusable container designed and marketed (or otherwise intended) for use by consumers for receiving, transporting, storing, and dispensing gasoline, diesel fuel, or kerosene. For the purpose of this subpart, all utility jugs that are red, yellow or blue in color are deemed to be portable fuel containers, regardless of how they are labeled or marketed." 40 C.F.R. § 59.680.

16. PFCs manufactured after January 1, 2009 must be covered by a certificate of conformity. 40 C.F.R. §§ 59.600, 59.601(b).

17. Hydrocarbon emissions from PFCs contain volatile organic compounds, some of which are hazardous air pollutants. Hydrocarbon emissions from PFCs covered by the PFC Regulations may not exceed 0.3 grams per gallon per day when measured with the test procedures prescribed by the PFC Regulations. 40 C.F.R. § 59.611(a). The EPA based this standard on the performance of best available control technologies, including durable permeation barriers and automatically closing spouts, which the EPA has described as "a key part of the emission controls expected to be used to meet the [PFC Regulations'] standards." U.S. Envtl. Prot. Agency, Final Rule, *Control of Hazardous Air Pollutants from Mobile Sources*, 72 Fed. Reg. 8,428, 8,503 (Feb. 16, 2007).

18. The requirements and prohibitions of the PFC Regulations apply to all PFC manufacturers. 40 C.F.R. § 59.601(a). "Manufacturer" is defined as "any person who manufactures a portable fuel container for sale in the United States." *Id.* § 59.680.

19. A PFC manufacturer is responsible for all statements the manufacturer makes to EPA related to the PFC Regulations, including information not required during certification, and is required to provide truthful and complete information. 40 C.F.R. § 59.607.

20. The PFC Regulations prohibit manufacturers from selling, offering for sale, introducing or delivering for introduction into commerce in the United States, any new PFC that is subject to the emissions standards of the PFC Regulations and is manufactured after December 31, 2008 unless it is covered by a valid certificate of conformity, is labeled as required, and complies with all of the applicable requirements of the PFC Regulations, including compliance with the emissions standards for its useful life. 40 C.F.R. § 59.602(a).

21. Under 40 C.F.R. § 59.629, EPA may issue a certificate of conformity for an emission family for a specified production period, which may not exceed five years. *See* 40 C.F.R

§ 59.680 (defining "production period"). A PFC "emission family" is a group of PFCs that are expected to have similar emission characteristics throughout its useful life. 40 C.F.R. § 59.625(a); *see also* 40 C.F.R. § 59.680 (definition of "emission family"). PFCs should be grouped into the same emission family if they are the same in all of the following aspects: (1) type of material, (2) production method, (3) spout and cap design, (4) gasket material and design, (5) emission control strategy, and (6) strategy for pressure venting. 40 C.F.R. § 59.625(b).

22. To support an application for a certificate of conformity, a PFC manufacturer must conduct emission testing, as prescribed by the PFC Regulations, to show the PFC family complies with the PFC emission standard. 40 C.F.R. § 59.626.

23. PFC emission testing must be performed on the PFC described in the application, with the applicable spout attached, except as otherwise provided. 40 C.F.R. § 59.653; *see also* 40 C.F.R. §§ 59.611, 59.650-59.653.

24. The testing required by the PFC Regulations include a "preconditioning for durability" phase and a "preconditioning fuel soak" phase that must both be completed prior to the emissions test. 40 C.F.R. § 59.653(a)-(b). The "preconditioning for durability" phase includes pressure cycling, UV exposure, and slosh testing steps. 40 C.F.R. § 59.653(a)(1)-(3).

25. A "spout actuation and inversion" step is required at the end of both "preconditioning" phases. 40 C.F.R. § 59.653(a)(4). The "spout actuation and inversion" step must be taken before the diurnal emission test unless EPA determines its omission will not affect emissions from the PFC. 40 C.F.R. § 59.653(a). If, at any point during the spout actuation step, the spout fails to return to the closed position, the PFC fails the emissions test and the PFC is not in compliance with the PFC Regulations. 40 C.F.R. § 59.653(a)(4)(ii)(C).

26. The final phase of the testing required by the PFC Regulations is the diurnal

emissions test. 40 C.F.R. § 59.653(d). This phase measures the PFC's emissions.

27. For purposes of certification, an emission family is considered in compliance with the PFC emission standard if the test results from all PFCs in the family that have been tested show measured emission levels that are at or below the applicable standard. 40 C.F.R. § 59.627(a). The emission family is deemed not to comply with the emission standard if any container representing that family has test results showing an official emission level above the standard. 40 C.F.R. § 59.627(b).

28. PFC manufacturers must include the following items, among other things, in their application for a certificate of conformity for an emission family:

    a. the test equipment and procedures used, including any special or alternate test procedures used, 40 C.F.R. § 59.623(d);

    b. statement that the PFC was tested as described in the application (including test procedures, test parameters, and test fuel) to show the requirements of the PFC Regulations have been met, 40 C.F.R. § 59.623(h);

    c. emission data to show their products meet the applicable emission standards, 40 C.F.R. § 59.623(i);

    d. all test results, including those from invalid tests or from any other tests, whether or not they were conducted according to the test procedures of the PFC Regulations, 40 C.F.R. § 59.623(j); and,

    e. an unconditional certification that all products in the emission family comply with the requirements of the PFC Regulations, other referenced parts of the Code of Federal Regulations, and the CAA, 40 C.F.R. § 59.623(k).

29. An application for a certificate of conformity must not include false or incomplete statements or information. 40 C.F.R. § 59.622(b).

30. A PFC manufacturer may ask to use emission data from a previous production period instead of doing new tests, but only if the emission data from the previous production period remains the appropriate emission-data unit. 40 C.F.R. § 59.626(d).

31. PFC manufacturers must use good engineering judgment for all decisions related to an application for a certificate of conformity. 40 C.F.R. § 59.622(d); s*ee also id.* § 59.603.

32. EPA may suspend, revoke, or void a certificate of conformity if a manufacturer, among other things, submits false or incomplete information, 40 C.F.R. § 59.629(c)(2), or takes any action that circumvents the intent of the CAA or the PFC Regulations. 40 C.F.R. § 59.629(c)(7).

33. If a person violates any prohibition or requirement of the PFC Regulations or the Act concerning PFCs, it shall be considered a separate violation for each PFC. 40 C.F.R. §59.602(g).

## GENERAL ALLEGATIONS

**A. Midwest Can PFC Emission Testing**

34. In 2008, Midwest Can hired Testing Services Group ("SGS")[1] to conduct compliance testing on its PFCs.

35. The testing, conducted by SGS between October and December 2008, involved 20 Midwest Can PFCs.

    a. Fifteen of the tested PFCs were "co-extruded" plastic cans in three sizes: 1.0-gallon, 2.0-gallon, and 5.0-gallon.

---

[1] TSG was purchased by SGS in May 2015. For the purposes of this Complaint, both parties will be referred to as SGS, unless differentiation is deemed necessary.

    b.  The remaining five were 6.0-gallon "fluorinated" plastic cans.

    c.  SGS tested five of each size PFC and used one of each size as a "trip blank" as specified in 40 C.F.R. §59.653. The remaining four PFCs from each size category (sixteen total PFCs) underwent emissions testing.

 36. During the preconditioning fuel soak phase of the test, SGS conditioned the PFCs with the spout portion of the container system inverted in the PFCs.

 37. SGS discovered after the preconditioning fuel soak phase that eighteen of the twenty spouts on PFCs being tested had developed cracks. SGS, in consultation with Midwest Can, replaced the spouts and proceeded with the emissions testing.

 38. In a test report prepared for Midwest Can, SGS reported that four of the tested PFCs failed the October-December 2008 test:

    a.  One 6.0-gallon fluorinated PFC was "removed from testing" because it cracked during the UV exposure step of the preconditioning phase.

    b.  One 5.0-gallon co-extruded PFC failed during the spout actuation step of the emission test. SGS replaced the failed spout and did not remove the PFC from further testing.

    c.  A 5.0-gallon co-extruded PFC and a 6.0-gallon fluorinated PFC, neither of which had failed previous phases of test, failed the diurnal emissions phase of the test because their emissions were greater than the emission standard set by the PFC Regulations.

 39. Between December 2008 and January 2009, Midwest Can directed SGS to re-test the two 5.0-gallon co-extruded PFCs and one 6.0-gallon fluorinated PFC that had failed the October-December 2008 emissions test. On January 12, 2009, SGS issued a test report showing

that all three PFCs failed to meet the PFC Regulations' emission standard.

40. In January 2009, Midwest Can directed SGS to re-test all of the 6.0-gallon fluorinated PFCs that had been tested in the October-December 2008 emissions test, including the 6.0-gallon fluorinated PFC that was re-tested at the end December 2008. One of these PFCs failed the test during the diurnal emissions testing phase.

### B. Midwest Can Certificate of Conformity for Co-Extruded PFCs

41. On December 31, 2008 Midwest Can submitted, to the EPA, an application for a certificate of conformity for its emission family of "co-extruded" plastic PFCs, identified as 9MDC2P2AABM1 ("AABM1 Family"). The 1.0-gallon, 2.0-gallon, and 5.0-gallon PFCs from the October-December 2008 test were part of the AABM1 Family.

42. In its December 31, 2008 certificate of conformity application for the AABM1 Family:

    a. Midwest Can's authorized manufacturing representative attested that the AABM1 Family had been tested in conformance with the standards and requirements of the PFC regulations. Midwest Can did not disclose SGS's replacement of the PFC spouts following the preconditioning fuel soak and other phases of the emission test.

    b. Midwest Can provided test results only for the 1.0-gallon PFCs that passed the October-December emissions test. Midwest Can did not provide test results showing that PFCs from the AABM1 family had spout failures or exceeded the PFC Regulations' emission standard during the 2008 emission tests. Midwest Can stated in its application that there were no invalid tests to report in the application.

    c.  Midwest Can unconditionally certified that the PFCs in the AABM1 Family complied with the PFC Regulations' emission standards.

43. In January 2009, the EPA issued to Midwest Can a certificate of conformity for the AABM1 Family based on the application submitted by Midwest Can.

44. Because a PFC certificate of conformity is only valid for five years, on October 21, 2014, Midwest Can submitted to the EPA an application for a new certificate of conformity for the AABM1 emission family of PFCs, now identified as EMDC2P2AABM1 ("AABM1 Family [2014]"). In that application:

    a.  Midwest Can submitted the same results from the October-December 2008 emission test that it submitted in its 2008 application.

    b.  Midwest Can's authorized manufacturing representative attested that the AABM1 Family [2014] had been tested in conformance with the standards and requirements of the PFC regulations. Despite submitting results from the October-December 2008 emission test, Midwest Can did not disclose SGS's replacement of the PFC spouts during that test.

    c.  Midwest Can provided test results only for the 1.0-gallon PFCs that passed the October-December 2008 emissions test. Midwest Can did not provide results showing that PFCs from the AABM1 Family [2014] had spout failures or exceeded the PFC Regulations' emission standard during the 2008 emissions tests. Midwest Can stated that there were no invalid tests to report in the application.

    d.  Midwest Can unconditionally certified that the PFCs in the AABM1 Family [2014] complied with the PFC Regulations' emission standards.

45. In October 2014, the EPA issued to Midwest Can a certificate of conformity for the AABM1 Family [2014] based on the application submitted by Midwest Can.

46. On information and belief, Midwest Can sold millions of PFCs covered by the 2014 certificate of conformity.

**C. Midwest Can Certificate of Conformity for Fluorinated PFCs**

47. On April 17, 2009, Midwest Can submitted an application for a certificate of conformity for its emission family of "fluorinated" plastic PFCs, identified as 9MDC2P4AABM2 ("AABM2 Family"). On information and belief, the 6.0-gallon PFCs tested in the emissions tests conducted in 2008 and 2009 were part of the AABM2 Family.

48. In its April 17, 2009 certificate of conformity application for the AABM2 Family:

   a. Midwest Can's authorized manufacturing representative attested that the AABM2 Family had been tested in conformance with the standards and requirements of the PFC regulations. Midwest Can did not disclose SGS's replacement of the PFC spouts following the preconditioning fuel soak in the October-December 2008 test and prior to the late December 2008 and January 2009 emission tests.

   b. Midwest Can provided test results showing three 6.0-gallon fluorinated PFCs passing emissions tests. Midwest Can did not provide test results showing that two of those PFCs exceeded the PFC Regulations' emission standard during the October-December 2008 test, the late December 2008 test, and January 2009 test. Midwest Can did not report the 6.0-gallon fluorinated PFC that cracked during the preconditioning phase of the October-December 2008 test.

11

      c.      Midwest Can unconditionally certified that the PFCs in the AABM2 Family complied with the PFC Regulations' emission standards.

49. In June 2009, the EPA issued to Midwest Can a certificate of conformity for the AABM2 Family based on the application submitted by Midwest Can.

50. Because a PFC certificate of conformity is only valid for five years, on October 21, 2014, Midwest Can submitted to the EPA an application for a new certificate of conformity for the AABM2 emission family of PFCs, now identified as EMDC2P4AABM2 ("AABM2 Family [2014]"). In that application:

      a.      Midwest Can submitted the same results that it submitted in its 2009 application.

      b.      Midwest Can's authorized manufacturing representative attested that the AABM2 Family [2014] had been tested in conformance with the standards and requirements of the PFC regulations. Midwest Can did not disclose SGS's replacement of the PFC spouts following the preconditioning fuel soak in the October-December 2008 test and prior to the late December 2008 and January 2009 emission tests.

      c.      Midwest Can provided test results showing three 6.0-gallon fluorinated PFCs passing emissions tests. Midwest Can did not provide test results showing that two of those PFCs exceeded the PFC Regulations' emission standard during the October-December 2008 test, the late December 2008 test, and January 2009 test. Midwest Can did not report the 6.0-gallon fluorinated PFC that cracked during the preconditioning phase of the October-December 2008 test.

      d.      Midwest Can unconditionally certified that the PFCs in the AABM2 Family [2014] complied with the PFC Regulations' emission standards.

51.      In October 2014, the EPA issued to Midwest Can a certificate of conformity for the AABM2 Family based on the application submitted by Midwest Can.

### D. EPA Emissions Test for Midwest Can PFCs

52.      In May 2016 through February 2017, the EPA contracted an emissions test lab to conduct the PFC Regulations' emissions test on a set of Midwest Can's co-extruded plastic PFCs covered by the AABM1 Family [2014] certificate of conformity: two 1.0-gallon PFCs, two 2.0-gallon PFCs (one used as a trip blank), and two 5.0-gallon PFCs.

53.      All five of the PFCs tested by EPA (excluding the trip blank) failed the emission test during the preconditioning and spout actuation steps: one PFC cracked and spouts on the remaining four PFCs malfunctioned or broke.

54.      None of the five PFCs reached the diurnal emissions test phase because the spouts failed prior to that step.

## CLAIMS FOR RELIEF

### Count One

**Midwest Can provided false and/or incomplete information in its certificate of conformity application for emission family EMDC2P2AABM1**

55.      Paragraphs 1 through 54 are incorporated herein by reference.

56.      Under 40 C.F.R. § 59.607(a), PFC manufacturers are responsible for all statements made to the U.S. EPA related to the PFC Regulations, and must provide truthful and complete information.

57.      Under 40 C.F.R. § 59.622(b), an application for a PFC certificate of conformity must not include false or incomplete information.

58. Under 40 C.F.R. § 59.623, an application for a PFC certificate of conformity must include emission data to show the PFCs meet the applicable emission standards, 40 C.F.R. § 59.623(i), and all test results, including those from invalid tests or from any other tests, whether or not they were conducted according to the test procedures of the PFC Regulations, 40 C.F.R. § 59.623(j).

59. In 2008 and 2009 Midwest Can ordered emission testing required by the PFC Regulations for its co-extruded PFCs.

    a. Midwest Can replaced spouts that cracked during the pre-conditioning fuel soak phase of the one of the tests.

    b. Two co-extruded plastic PFCs failed the emissions test on two separate occasions.

60. In 2014, Midwest Can applied to the EPA for a certificate of conformity for PFC emission family EMDC2P2AABM1 ("AABM1 Family [2014]"), its family of co-extruded plastic PFCs.

61. In that 2014 certificate of conformity application, Midwest Can:

    a. Attested that the PFCs in the emission family had been tested in conformance with the requirements of the PFC Regulations and that no special test procedures or deviations were employed, even though Midwest Can had replaced the spouts on the PFCs in the middle of the emissions test;

    b. Attested that the PFCs complied with the requirements of the PFC Regulations even though it was aware that PFCs in the emission family had failed emissions tests on multiple occasions.

    c. Submitted test results from only passing test results from only four PFCs,

and did not submit results for the other eight tested PFCs, including the two PFCs that failed the emissions test.

        d.     Attested that there were no invalid test results to report.

62. Midwest Can violated 40 C.F.R. § 59.607(a) because it did not provide truthful and/or complete information to the EPA.

63. Midwest Can violated 40 C.F.R. §§ 59.622(b) and 59.623 because its 2014 application for a certificate of conformity for the AABM1 Family [2014] did not include information required by the PFC Regulations and contained false and/or incomplete information.

64. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and under the Federal Civil Penalties Inflation Adjustment Act of 1990 and EPA's implementing regulations, the violations set forth above are subject to injunctive relief and civil penalties up to $101,439 for each violation.

## Count Two

**Midwest Can provided false and/or incomplete information in its certificate of conformity application for emission family EMDC2P4AABM2**

65. Paragraphs 1 through 64 are incorporated herein by reference.

66. Under 40 C.F.R. § 59.607(a), PFC manufacturers are responsible for all statements made to the U.S. EPA related to the PFC Regulations, and must provide truthful and complete information.

67. Under 40 C.F.R. § 59.622(b), an application for a PFC certificate of conformity must not include false or incomplete information.

68. Under 40 C.F.R. § 59.623, an application for a PFC certificate of conformity must include emission data to show the PFCs meet the applicable emission standards, 40 C.F.R. § 59.623(i), and all test results, including those from invalid tests or from any other tests, whether

or not they were conducted according to the test procedures of the PFC Regulations, 40 C.F.R. § 59.623(j).

69. In 2008 and 2009 Midwest Can ordered emission testing required by the PFC Regulations for four fluorinated PFCs.

    a. Midwest Can replaced spouts that cracked during the pre-conditioning fuel soak phase of one of the tests.

    b. One of the fluorinated PFCs failed two separate emission tests, and two fluorinated PFCs failed one emission test each.

70. In 2014, Midwest Can applied to the EPA for a certificate of conformity for PFC emission family EMDC2P4AABM2 ("AABM2 Family [2014]"), its family of fluorinated plastic PFCs.

71. In that 2014 certificate of conformity application:

    a. Attested that the PFCs in the emission family had been tested in conformance with the requirements of the PFC Regulations and that no special test procedures or deviations were employed, even though Midwest Can had replaced the spouts on the PFCs in the middle of the emissions test;

    b. Attested that the PFCs complied with the requirements of the PFC Regulations even though it was aware that PFCs in the emission family had failed emissions tests on multiple occasions.

    c. Submitted only passing test results from three tested PFCs, and did not submit failed test results for those three PFCs, or any results for the fourth PFC, which had also failed its emission test.

    d. Attested that there were no invalid test results to report.

72. Midwest Can violated 40 C.F.R. § 59.607(a) because it did not provide truthful and/or complete information to the EPA.

73. Midwest Can violated 40 C.F.R. §§ 59.622(b) and 59.623 because its 2014 application for a certificate of conformity for the AABM2 Family [2014] did not include information required by the PFC Regulations and contained false and/or incomplete information.

74. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and under the Federal Civil Penalties Inflation Adjustment Act of 1990 and EPA's implementing regulations, the violations set forth above are subject to injunctive relief and civil penalties up to $101,439 for each violation.

## Count Three

**Midwest Can failed to use good engineering judgment for decisions related to its PFC tests and certificate of conformity applications**

75. Paragraphs 1 through 74 are incorporated herein by reference.

76. Under 40 C.F.R. § 59.603(a), PFC manufacturers must use good engineering judgment for decisions related to any requirements under the PFC Regulations, including applications for certificates of conformity and any testing to show that a PFC complies with applicable requirements.

77. Under 40 C.F.R. § 59.622(d), PFC manufacturers must use good engineering judgment for all decisions related to applications for PFC certificates of conformity.

78. "Good engineering judgment" means "judgment consistent with generally accepted scientific and engineering principles and all available relevant information." 40 C.F.R. § 59.680.

79. Midwest Can did not use good engineering judgment when it replaced defective spouts in the middle of emissions tests undertaken to show that PFCs complied with the PFC Regulations.

80. Midwest Can did not use good engineering judgment when it failed to disclose in its applications for certificates of conformity for the AABM1 Family [2014] and AABM2 Family [2014]:

    a. that Midwest Can replaced the spouts of PFCs in those emission families in the middle of emission tests undertaken to demonstrate compliance with the PFC Regulations; and,

    b. test results showing that PFCs in those emissions families had failed emission tests undertaken to demonstrate compliance with the PFC Regulations.

81. Accordingly, Midwest Can violated 40 C.F.R. §§ 59.603 and 59.622(d).

82. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and under the Federal Civil Penalties Inflation Adjustment Act of 1990 and EPA's implementing regulations, the violations set forth above are subject to injunctive relief and civil penalties up to $101,439 for each violation.

### Count Four

**Midwest Can sold PFCs that were not covered by a valid certificate of conformity and that did not comply with all of the applicable requirements of the PFC Regulations.**

83. Paragraphs 1 through 82 are incorporated herein by reference.

84. Under 40 C.F.R. § 59.602(a), PFC manufacturers may not sell, offer for sale, introduce or deliver for introduction into commerce in the United States, any new PFC that is subject to the emissions standards of the PFC Regulations and is manufactured after December 31, 2008 unless it is covered by a valid certificate of conformity, is labeled as required, and complies with all of the applicable requirements of the PFC Regulations, including compliance with the emissions standards for its useful life.

85. A PFC emission family is deemed not to comply with the emission standard if any PFC representing that family has test results showing an official emission level above the standard. 40 C.F.R. § 59.627(b).

86. Midwest Can is a PFC manufacturer as defined in 40 C.F.R. § 59.680.

87. Midwest Can's application for a certificate of conformity for the AABM1 Family [2014] contained false and/or incomplete information, and the EPA issued a certificate of conformity for PFCs in that emission family based on false and/or incomplete information.

88. Midwest Can PFCs within the AABM1 Family [2014] failed the emission test prescribed by the PFC Regulations in 2008, 2009, and 2016.

89. Midwest Can violated 40 C.F.R. § 59.602(a) because it sold, offered for sale, and introduced into commerce in the United States PFCs that were in the AABM1 Family [2014] and that did not meet the requirements of the PFC Regulations.

90. If a person violates any prohibition or requirement of the PFC Regulations or the Act concerning PFCs, it shall be considered a separate violation for each PFC. 40 C.F.R. §59.602(g).

91. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and under the Federal Civil Penalties Inflation Adjustment Act of 1990 and EPA's implementing regulations, the violations set forth above are subject to injunctive relief and civil penalties up to $101,439 for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America respectfully requests that this Court:

1. Enjoin Midwest Can from further violations of the CAA and order Midwest Can to take all steps necessary to comply with the CAA;

2. Assess civil penalties against Midwest of up to $37,500 for each violation until

November 2, 2015, and up to $101,439 for each violation after November 2, 2015;

     3.     Award the United States all costs and disbursements of this action; and,

     4.     Grant such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

JOHN R. LAUSCH, Jr.
United States Attorney

Jan. 19, 2021     By: *Nigel B. Cooney*
Date                 NIGEL B. COONEY
                      Assistant United States Attorney
                      219 South Dearborn Street
                      Chicago, Illinois 60604
                      (312) 353-1996
                      nigel.cooney@usdoj.gov